EFILED LUCAS COUNTY
5/22/2026 11:10 AM
COMMON PLEAS COURT
BERNIE QUILTER, CLERK
EFILE ID:  249490

THE COURT OF COMMON PLEAS
LUCAS COUNTY, OHIO

LUCKY LANDSCAPING LLC D/B/A : 
LUCK LANDSCAPING, :
1907 N. Reynolds Road :
Toledo, OH 43615 :
:
*Plaintiff,* :
:
v. :
:
JANET O. LANTERMAN, :
29727 E. River Road :
Perrysburg, OH 43551 :
:
*Defendant.* :

**Exhibit A**

**Civil Action No.:**

**CI2026-02148**
Judge_____
McNamara, Joseph V.

**JURY DEMAND ENDORSED**

## COMPLAINT

Plaintiff Lucky Landscaping LLC d/b/a Luck Landscaping ("Luck Landscaping" or "Plaintiff"), for its Complaint against Defendant Janet O. Lanterman ("Ms. Lanterman" or "Defendant"), avers and alleges as follows:

### Introduction

1. This case arises from Ms. Lanterman's wrongful termination of a long-term estate development relationship after she induced Luck Landscaping to commit extraordinary labor, equipment, staffing, time, and business capacity to her property and projects.

2. Luck Landscaping is a small Ohio business founded and operated by Josh Luck ("Mr. Luck"), a landscaping professional and northwest Ohio native, who has over twenty years of industry experience in landscape design, construction, and estate-scale outdoor improvements.

3. Mr. Luck began in lawn maintenance and grew Luck Landscaping into a consulting and design-build firm. He provides paid consultation appointments, has personally performed and

managed millions of dollars worth of projects, and operates Luck Landscaping Academy, through which he teaches contractors business and industry practices. Luck Landscaping's scope development, budgeting, consulting, and project-related judgments are high-end professional services with independent value that are routinely requested and relied upon in connection with property transformation projects.

4. Mr. Luck built his business through years of hands-on work, his reputation, referrals, and extensive trade-show marketing.

5. Mr. Luck met Ms. Lanterman in early 2025, toured her estate (the "Estate"), and established a business relationship.

6. Mr. Luck reasonably believed he had secured what appeared to be the opportunity of a lifetime: a multi-phase, multi-year estate transformation project with ongoing management and maintenance responsibilities.

7. Ms. Lanterman did not present this opportunity as a one-off, limited engagement. Rather, she cultivated a relationship-driven arrangement in which Luck Landscaping would design, build, expand, and ultimately help steward the Estate over years to come. She informed him Luck Landscaping would be a long-term client, and would serve as the Estate manager.

8. Defendant repeatedly encouraged Luck Landscaping to think bigger, do more, and commit more resources. Ms. Lanterman repeatedly approved and directed substantial expansions in scope, including large-scale front-estate landscaping, masonry and entry features, irrigation and lighting work, extensive planting, a major front water feature addition, and long-term estate maintenance and winter services.

9. Ms. Lanterman also represented, expressly and by course of conduct, that Luck Landscaping would continue to have work at the Estate into 2026 and beyond, including ongoing

estate management and maintenance. She told him that Luck Landscaping would "have a job for life" at the Estate, and Luck Landscaping would be written into her will. In reliance on those representations, Luck Landscaping hired personnel, acquired and allocated equipment, declined other work, turned down trade shows, and structured its operations around transforming and administering the Estate.

10. Acting on Defendant's approvals and directions, Luck Landscaping performed months of labor, furnished materials, coordinated subcontractors and township matters, staged equipment, and advanced the project in phases under the parties' agreements and modifications.

11. After Luck Landscaping devoted substantial resources to the Estate, performed a substantial portion of the Estate transformation work, procured project-specific equipment and supplies, and declined other opportunities in reliance on the continuation of the relationship, Defendant abruptly changed course.

12. Upon information and belief, Ms. Lanterman has done this to similarly situated contractors in the past, and this is her latest attempt to rug-pull a contractor.

13. More specifically, upon information and belief, Ms. Lanterman previously engaged in substantially similar conduct with another established northwest Ohio landscaping contractor.

14. Beginning in late 2025, Defendant attempted to recast previously approved work, project expansions, and maintenance-related arrangements as unauthorized. She suspended work, refused to allow Luck Landscaping to continue performance, disputed charges after the fact, and ultimately purported to terminate Luck Landscaping for cause in April 2026.

15. The purported termination for cause is a pretextual effort to avoid paying the full value of the parties' agreements, to avoid the consequences of Ms. Lanterman's own approvals and directives, and to shift to Luck Landscaping the financial burden of a work that she repeatedly

3

expanded and encouraged.

16. Luck Landscaping brings this action to recover the substantial damages caused by Ms. Lanterman's conduct, including unpaid contract amounts, lost profits on wrongfully terminated work, reliance damages, the value of labor and materials furnished, and all other damages available under Ohio law.

## Nature of the Action

17. This is an action for damages arising from Defendant's breach of multiple agreements with Luck Landscaping concerning the design, construction, expansion, maintenance, and servicing of the Estate, owned by Ms. Lanterman and located at 29727 E. River Road, Perrysburg, Ohio.

18. Luck Landscaping and Ms. Lanterman's relationship includes, at minimum, the following: a written Landscape Installation Contract executed on or about March 28, 2025 (the "Construction Agreement"); subsequent written project updates to the Construction Agreement, scope-scale-budget reports, approvals, and modifications, including Versions 1 through 5 and related project documentation, which reflected changes, additions, refinements, and expanded work under the Construction Agreement; a separate Front Landscaping Renovation & Water Feature Addition agreement and deposit arrangement (the "Water Feature Agreement"); and a separate agreement, whether express, oral, written, implied-in-fact, or established by course of dealing or performance, for estate maintenance and winter services, including mowing, leaf cleanup, snow and ice management, and related equipment and supply procurement (the "Service and Maintenance Agreement"). True and accurate copies of the Construction Agreement and Water Feature Agreement are attached as Exhibit A and Exhibit B, respectively. The Construction Agreement, Water Feature Agreement, and Service and Maintenance Agreement are collectively

4

referred to below as the "Contracts."

19. Luck Landscaping performed substantial work under the Contracts and stood ready, willing, and able to continue performance.

20. Defendant wrongfully prevented further performance, refused to pay amounts due, repudiated obligations she had previously approved, and purported to terminate Luck Landscaping without cause.

21. As a direct and proximate result, Luck Landscaping has suffered damages in an amount to be proven at trial, but well in excess of the jurisdictional minimum of this Court.

22. To date, Luck Landscaping has satisfied all necessary prerequisites under the Contracts and attempted to settle this dispute prior to litigation. Such attempts were to no avail, and Luck Landscaping has regretfully been forced to bring this action.

### Parties, Jurisdiction, and Venue

23. Plaintiff Luck Landscaping is an Ohio limited liability company with its principal place of business in Lucas County, Ohio.

24. Ms. Lanterman is a natural person. Upon information and belief, Ms. Lanterman is a resident of Perrysburg, Ohio, located within Wood County, Ohio.

25. This Court possesses subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional threshold for this Court, and this action raises questions under the laws of the State of Ohio.

26. This Court has personal jurisdiction over Ms. Lanterman, and venue is proper under Civil Rule 3(C) because Luck Landscaping and Ms. Lanterman conducted activities in Lucas County, Ohio that gave rise to Luck Landscaping's claims for relief, and all or part of Luck Landscaping's claims arose in Lucas County, Ohio.

## Factual Background

### *The Relationship Begins and Defendant Presents a Multi-Phase Estate Opportunity*

27.     On or about February 22, 2025, Mr. Luck and Ms. Lanterman connected after Ms. Lanterman expressed interest in significant landscaping and estate-improvement work at the Estate. Shortly thereafter, Luck Landscaping performed an initial evaluation of the Estate and a project consultation, subsequently entering the design phase.

28.     From its headquarters in Lucas County, Ohio, Luck Landscaping prepared design materials, renderings, scope discussions, and budget reports for Ms. Lanterman's review.

29.     The work sought by Ms. Lanterman for the Estate was not a simple residential yard project. Rather, it was a large-scale effort to transform the Estate, requiring significant planning, grading, hardscape integration, planting, irrigation, lighting, access improvements, hillside work, and coordinated multi-phase execution.

30.     From the outset, Ms. Lanterman communicated a vision for a substantial transformation of the Estate, including improvements to the front entry, driveway approach, landscape beds, hillside access, masonry features, lighting, irrigation, and related Estate elements.

31.     Ms. Lanterman also expressed a desire for Luck Landscaping to conduct ongoing care and stewardship of the Estate, including maintenance and seasonal services.

32.     Through her words, approvals, and course of conduct, Ms. Lanterman led Luck Landscaping to reasonably believe that Luck Landscaping would not merely install a limited set of robust improvements at the Estate but would become the principal contractor and continuing landscape manager for a long-term, evolving project there.

### *The Construction Agreement*

33.     On or about March 28, 2025, Luck Landscaping and Ms. Lanterman entered into

the Construction Agreement for work at the Estate. (*See generally* Ex. A.)

34. Under the Construction Agreement, Luck Landscaping agreed to furnish labor and select materials for the completion of the proposed project.

35. The Construction Agreement described a broad estate-improvement scope, including, among other things: front entry and driveway improvements; natural stone steps and retaining walls; planting and landscape installation; irrigation; LED lighting; grading and sod; gate and entry-related features; and other integrated site improvements. (*Id.*)

36. The Construction Agreement established a milestone-based payment structure. (*Id.*)

37. The Construction Agreement further provided, among other things, that: Luck Landscaping would provide labor, materials, equipment, and supervision necessary to complete the work; a 10% construction contingency would be allotted for the project; and unexpected costs and additional charges revealed during construction were not included in the Construction Agreement price and would be discussed and added through a change order. (*Id.*)

38. Luck Landscaping thereafter proceeded with performance under the Construction Agreement.

39. Defendant paid the initial deposit and several progress payments associated with Luck Landscaping's work, confirming the existence and operation of the Construction Agreement.

***Estate Project Expansion Through Successive Versions, Approvals, and Directives***

40. As Luck Landscaping's work on the Estate progressed, Ms. Lanterman sought and agreed to significant scope expansions.

41. To meet Ms. Lanterman's requests, Luck Landscaping, from its Lucas County headquarters, prepared and transmitted updated project documents, including successive Scope-Scale-Budget Reports and project amendments, commonly referred to as Versions 2, 3, 4, and 5

7

of the Construction Agreement. (*See generally* Ex. A.) Luck Landscaping and Ms. Lanterman agreed to the amendments.

42.     These documents, together with Luck Landscaping and Ms. Lanterman's signatures, payments, approvals, directives, course of performance, and acceptance of benefits, reflected and confirmed the parties' agreement to expand the scope, budget, timing, cost-plus layer, monthly billing, estate maintenance, equipment procurement, and multi-year nature of Estate work.

43.     These documents also reflect the reality of the Estate work as it developed: an ever larger, more complex, more expensive, and more architecturally ambitious transformation of the Estate than initially contemplated at the onset of Luck Landscaping and Ms. Lanterman's relationship.

44.     Ms. Lanterman reviewed these revisions to the Construction Agreement, met with Mr. Luck at the Estate to approve additions, direct refinements, and continued to authorize work as Luck Landscaping's work to transform the Estate progressed.

45.     Ms. Lanterman approved or directed, among other things: expanded front-estate landscaping; revised and enlarged planting plans; additional and estate-sized plant selections; masonry and perimeter wall concepts; irrigation and lighting expansions; grading and mound work; tree work and cleanup; and other enhancements to the Estate.

46.     Defendant also authorized Luck Landscaping to represent her interests in zoning and variance matters relating to masonry and fencing improvements at the Estate.

47.     Luck Landscaping, in turn, devoted substantial time and effort to township meetings, applications, revisions, and approvals in furtherance of Defendant's project.

48.     Throughout 2025, Luck Landscaping mobilized labor and equipment, staged

materials, coordinated subcontractors, and performed substantial work at the Estate in reliance on Defendant's approvals and the continuing expansion of the project.

49. Defendant accepted the benefits of that work from on or about March 2025 through on or about December 2025, but Ms. Lanterman short-paid for work under the Construction Agreement by over $200,000.

### *The Water Feature Agreement*

50. In addition to the Construction Agreement, Luck Landscaping and Defendant entered into the Water Feature Agreement on September 16, 2025. (*See generally* Ex. B.)

51. The Water Feature Agreement contemplated a substantial add-on project involving, among other things: a multi-tier water feature; an approximately 200-foot meandering stream and pond elements; limestone falls and fountainscapes, hardscape and masonry-related features; expanded plantings; lighting; and related excavation, labor, and equipment. (*Id.*) The Water Feature Agreement forecast a budget of over $800,000. (*Id.* at 3.)

52. Defendant approved the Water Feature Agreement and paid a $200,000 deposit toward that add-on project.

53. Luck Landscaping accepted that deposit, allocated its resources, and began integrating the Water Feature Agreement into the overall project sequencing and planning.

54. From on or about September 29, 2025 to on or about October 31, 2025, Luck Landscaping also performed related work and incurred costs in reliance on Defendant's approval of the Water Feature Agreement. Luck Landscaping completed over $200,000 in unpaid work and approximately $450,000 additional work remains under the Water Feature Agreement.

55. Defendant later attempted to characterize this project and its approvals in a narrower or more tentative way, but her payment of the deposit, her participation in planning, and

9

her course of conduct during Luck Landscaping's performance of substantial work confirm the existence of the Water Feature Agreement and her assent to proceed.

56.     Luck Landscaping has not been permitted to perform the entirety of the Water Feature Agreement, for which approximately $450,000 additional work remains.

### The Service and Maintenance Agreement

57.     Separate from the core construction work set forth in the Construction Agreement and the Water Feature Agreement, Ms. Lanterman requested that Luck Landscaping undertake ongoing estate maintenance and winter-related services for the Estate.

58.     On or about April 2025 and renewed on or about September 2025, Defendant sought comprehensive care for the Estate, including services beyond Luck Landscaping's ordinary design-build scope, such as mowing, leaf cleanup, snow removal, salting, and related Estate support on a year-round basis.  Defendant then permitted or directed Luck Landscaping to assume maintenance responsibilities after the prior contractor was released on or around September or October 2025.

59.     Luck Landscaping explained that it had evolved primarily into a specialized design-build firm and did not maintain a routine maintenance fleet for ordinary recurring service work of that kind.

60.     Defendant nevertheless wanted Luck Landscaping—not some unrelated maintenance vendor—to continue caring for the Estate on a comprehensive basis.

61.     In response, the parties entered into a separate arrangement, whether express, oral, written, implied-in-fact, or established by course of dealing, under which Luck Landscaping would provide estate maintenance and winter services and procure certain equipment and supplies necessary to service the Estate at the level Defendant requested.

10

62. Defendant agreed that project and Estate-specific equipment would be acquired for the Estate and used in connection with those services.

63. In reliance on that agreement and Defendant's directives, Luck Landscaping procured maintenance-related equipment and supplies for the Estate, including items associated with mowing, leaf management, snow and ice operations, and related support infrastructure.

64. Luck Landscaping also performed winter services, including plowing, salting, and related snow and ice management for the Estate and associated locations connected to Defendant.

65. From on or about September 2025 through the suspension and termination of Luck Landscaping engagement on or about April 9, 2026, Defendant accepted the benefit of those services under the Service and Maintenance Agreement. Ms. Lanterman has failed to pay over $4,000 of snow services performed under the Service and Maintenance Agreement.

66. At every turn, Ms. Lanterman requested, accepted, and benefited from Luck Landscaping's services under the Service and Maintenance Agreement, including, but not limited to, equipment procurement and related efforts under circumstances that entitle Luck Landscaping to recovery under that agreement or, in the alternative, in equity.

### *Luck Landscaping's Performance and Reliance on Ms. Lanterman's Assurances*

67. Plaintiff performed substantial work under the Construction Agreement, the Water Feature Agreement, and the Service and Maintenance Agreement.

68. Luck Landscaping's work included, among other things: mobilization and site preparation; access road and grading work; drainage and water management; boulder and retaining work; planting and landscape installation; irrigation and lighting work; masonry work; concrete footing; artificial turf installation; masonry-related preparation and coordination; tree trimming and removal; cleanup and seasonal work; township and zoning representation; water feature

11

planning and related work; and winter services.

69.     Luck Landscaping also remained ready, willing, and able to continue performance on the remaining phases of the project.

70.     Defendant's Estate work with Luck Landscaping was expected to continue into 2026 (and beyond), and, based on Defendant's representations and approvals, to involve millions of dollars in additional work.

71.     In reliance on the continuation of Defendant's Estate project and the Contracts, Luck Landscaping made substantial business commitments, including: hiring additional employees; purchasing and allocating equipment; dedicating labor and scheduling capacity; reducing or declining other project opportunities; and shifting business operations to support Lanterman's Estate.

72.     These reliance decisions were foreseeable, reasonable, and induced by Ms. Lanterman's conduct.

### Defendant's Reversal, Suspension, and Wrongful Termination

73.     After months of performance and after Plaintiff had committed substantial resources to the Estate at Ms. Lanterman's direction, Ms. Lanterman abruptly changed posture.

74.     In December 2025, Defendant began raising after-the-fact objections to aspects of the work under the Contracts, including Christmas lighting, maintenance equipment, and project scope expansions, despite the plain text of the Contracts, Ms. Lanterman's prior approvals, ongoing discussions, and the parties' established course of dealing and/or performance.

75.     Defendant suspended work at the Estate, and, in January 2026, Defendant attempted to unilaterally redefine the parties' relationship by asserting that Version 5 of the Construction Agreement was merely conceptual and that no further work could proceed without

12

subsequent written authorization.

76. Defendant also disputed maintenance-related charges and attempted to disavow equipment and services that had been procured or performed in reliance on her requests and approvals per the Contracts.

77. Luck Landscaping responded in good faith, acknowledged Defendant's stated preferences for future documentation, and remained willing to meet and resolve issues so the project could continue.

78. Rather than working toward completion, Ms. Lanterman escalated the dispute. On or about March 6, 2026, counsel for Defendant sent a letter asserting that no additional work was to be performed absent written authorization and alleging overcharges.

79. Luck Landscaping, through counsel, responded on March 14, 2026, disputed Defendant's accusations, explained that Luck Landscaping had performed in accordance with the Contracts, and sought a practical path forward.

80. Luck Landscaping requested a meeting and attempted to resolve the matter without litigation.

81. Defendant refused to permit further performance and, by letter dated April 9, 2026, purported to terminate her relationship with Luck Landscaping for cause, directed Luck Landscaping to cease all work, and denied Luck Landscaping's entitlement to further compensation and performance of the Contracts.

82. Defendant's purported termination for cause was wrongful and unsupported.

83. Defendant had no valid basis to terminate Luck Landscaping for cause after: approving and expanding the scope of the Contracts over time; paying substantial sums under the Contracts; accepting the benefits of Luck Landscaping's extensive work for nearly the entirety of

13

the preceding ten months; inducing Luck Landscaping's reliance and continued performance; and then attempting to repudiate those arrangements after the fact.

84. Defendant's conduct constitutes breach, anticipatory repudiation, and wrongful prevention of performance.

### *Luck Landscaping's Damages*

85. Luck Landscaping's damages are substantial and will be proven **in detail** through discovery and at trial. As a direct and proximate result of Ms. Lanterman's conduct, Luck Landscaping has suffered damages, including but not limited to: (a) unpaid balances due and owing under the Contracts, including, but not limited to, the over $200,000 short payment under the Construction Agreement, unpaid work on the Water Feature Agreement, and unpaid work as to the Service and Maintenance Agreement; (b) lost profits on wrongfully terminated work under the Contracts, including over $1.1 million amount of remaining or unpaid work for the Construction Agreement, approximately $450,000 of remaining work for the Water Feature Agreement, and $75,000 in recurring annual revenue under the Service and Maintenance Agreement; (c) reliance damages arising from staffing, equipment, scheduling, and business commitments made in reliance on Defendant's projects; (d) the value of labor, materials, equipment use, and services furnished for Ms. Lanterman's benefit; (e) demobilization and remobilization costs; (f) costs associated with idle labor and equipment; and (g) and attorneys' fees, interest, and costs.

### Claims for Relief

### Count I: Breach of Contract
### (Construction Agreement)

86. Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

87. Luck Landscaping and Ms. Lanterman entered into a binding and valid contract— *i.e.*, the Construction Agreement for the construction of the landscaping improvements at the

14

Estate.

88. Luck Landscaping and Ms. Lanterman were at all times subject to every provision contained therein.

89. Luck Landscaping has honored and performed its obligations and duties under the Construction Agreement, except obligations and duties, if any, for which it was excused as a matter of law or equity.

90. Ms. Lanterman has failed to honor and perform her obligations and duties under the Construction Agreement by refusing to pay the amount due to Luck Landscaping.

91. Ms. Lanterman's failure and refusal to pay the amounts due to Luck Landscaping under the Construction Agreement, despite Luck Landscaping's demand for payment, constitute a breach of the Construction Agreement.

92. Ms. Lanterman's termination of Luck Landscaping was not sanctioned or warranted, constituting a breach and entitling Luck Landscaping to lost profits on the full scope of the Construction Agreement.

93. As a direct and proximate result of Ms. Lanterman's breach, Luck Landscaping has been damaged in an amount in excess of $25,000, including attorneys' fees and costs pursuant to the Construction Agreement, plus pre-judgment and post-judgment interest, the exact amount to be proven at trial.

**Count II: Breach of Contract**
**(Water Feature Agreement)**

94. Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

95. Luck Landscaping and Ms. Lanterman entered into a binding and valid contract— *i.e.*, the Water Feature Agreement—for the construction of the landscaping improvements at the Estate.

15

96. Luck Landscaping and Ms. Lanterman were at all times subject to every provision contained therein.

97. Luck Landscaping has honored and performed its obligations and duties under the Water Feature Agreement, except obligations and duties, if any, for which it was excused as a matter of law or equity.

98. Ms. Lanterman has failed to honor and perform her obligations and duties under the Water Feature Agreement by refusing to pay the amount due to Luck Landscaping.

99. Ms. Lanterman's failure and refusal to pay the amounts due to Luck Landscaping under the Water Feature Agreement, despite Luck Landscaping's demand for payment, constitute a breach of the Water Feature Agreement.

100. Ms. Lanterman's termination of Luck Landscaping was not sanctioned or warranted, constituting a breach and entitling Luck Landscaping to lost profits on the full scope of the Water Feature Agreement.

101. As a direct and proximate result of Ms. Lanterman's breach, Luck Landscaping has been damaged in an amount in excess of $25,000, including attorneys' fees and costs pursuant to the Water Feature Agreement, plus pre-judgment and post-judgment interest, the exact amount to be proven at trial.

### Count III: Breach of Contract
### (Service and Maintenance Agreement)

102. Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

103. Luck Landscaping and Ms. Lanterman entered into a binding and valid Service and Maintenance Agreement.

104. Luck Landscaping and Ms. Lanterman were at all times subject to every provision contained in the Service and Maintenance Agreement.

16

105. Luck Landscaping has honored and performed its obligations and duties under the Service and Maintenance Agreement, except obligations and duties, if any, for which it was excused as a matter of law or equity.

106. Ms. Lanterman has failed to honor and perform her obligations and duties under the Service and Maintenance Agreement by refusing to pay the amount due to Luck Landscaping.

107. Ms. Lanterman's failure and refusal to pay the amounts due to Luck Landscaping under the Service and Maintenance Agreement, despite Luck Landscaping's demand for payment, constitute a breach of the Contract.

108. Ms. Lanterman's termination of Luck Landscaping was not sanctioned or warranted, constituting a further breach and entitling Luck Landscaping to lost profits on the full scope of the Service and Maintenance Agreement.

109. As a direct and proximate result of Ms. Lanterman's breach, Luck Landscaping has been damaged in an amount in excess of $25,000, including attorneys' fees and costs pursuant to the Contract, plus pre-judgment and post-judgment interest, the exact amount to be proven at trial.

### Count IV: Quantum Meruit
### (In the Alternative to Counts I through III)

110. Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

111. At all relevant times, Ms. Lanterman knew that Luck Landscaping was performing labor, using materials, and providing services for the benefit of the Estate and that Luck Landscaping expected to be paid therefor.

112. Ms. Lanterman accepted and received the benefit of the labor, materials, and services performed by Luck Landscaping.

113. The fair and reasonable value of the labor, materials, and services provided by Luck Landscaping on the projects for the Estate, for the ultimate benefit of Ms. Lanterman, and for

17

which Luck Landscaping has not been paid, despite Luck Landscaping's repeated demand for payment from Ms. Lanterman, is in excess of $25,000, the exact amount to be determined at trial.

114. Ms. Lanterman owes Luck Landscaping in excess of $25,000 for such labor, materials, and services, the exact amount to be determined at trial, plus pre-judgment and post-judgment interest and costs incurred in this action.

### Count V: Unjust Enrichment
### (In the Alternative to Counts I through III)

115. Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

116. Luck Landscaping conferred a benefit on Ms. Lanterman through its labor, costs, and related services related to the Estate work.

117. Ms. Lanterman was aware of the benefit conferred on her by Luck Landscaping for its labor, costs, and related services and was aware of Luck Landscaping's right to payment for the resultant increase in value that these aggregated services and expenses had on Ms. Lanterman's property interests.

118. Ms. Lanterman has retained without payment the full benefit of Luck Landscaping's labor, costs, and related services to which she is not entitled. The parties agreed that the services performed by Luck Landscaping for Ms. Lanterman's benefit must be paid. Luck Landscaping continued to perform services at Ms. Lanterman's direction, and Ms. Lanterman has refused to pay.

119. As a result, Ms. Lanterman has been unjustly enriched, at Luck Landscaping's expense, by Ms. Lanterman's wrongful retention of the payments due to Luck Landscaping. Luck Landscaping is rightfully entitled to repayment by Ms. Lanterman for the increase in the value of benefits to her property interests by Luck Landscaping's labor, costs, and related services.

120. As a result of the unjust enrichment, Luck Landscaping has suffered compensatory

damages in excess of $25,000, the exact amount to be determined at trial, plus pre-judgment and post-judgment interest and costs incurred in this action.

**Count VI: Promissory Estoppel**
**(In the Alternative to Counts I through III)**

121.　Luck Landscaping restates the foregoing paragraphs as if fully rewritten herein.

122.　Ms. Lanterman made clear and unambiguous promises, representations, and directives that, among other things, Luck Landscaping would continue to manage and care for the Estate per the Service and Maintenance Agreement, that Luck Landscaping should obtain and dedicate equipment and resources necessary for that work, and that Plaintiff would be compensated for those efforts, services, and commitments.

123.　Ms. Lanterman's promises and actions also included, among other things, requesting comprehensive care for the Estate, directing Plaintiff to procure Estate-specific maintenance and winter-service equipment and supplies, approving or accepting maintenance-related preparations and services, and repeatedly fostering the understanding that Luck Landscaping would remain responsible for the ongoing stewardship of the Estate.

124.　Luck Landscaping's reliance on Ms. Lanterman's promises and actions was reasonable, foreseeable, and expected. Ms. Lanterman knew or should have known that Luck Landscaping would act in reliance on those promises by committing labor, time, equipment, supplies, staffing, and business capacity to the Estate and by foregoing other work opportunities.

125.　Luck Landscaping did, in fact, rely on Ms. Lanterman's promises and actions to its detriment.

126.　Luck Landscaping has suffered direct injury in excess of $25,000 as a result of that reliance, including, but not limited to, expenditures for equipment and supplies, labor and labor commitments, staffing obligations, lost business opportunities, unpaid services, and other reliance-

19

based losses.

127.    Enforcement of Ms. Lanterman's promises is necessary to avoid injustice.

128.    As such, Luck Landscaping is entitled to recover damages resulting from its reasonable and detrimental reliance on Ms. Lanterman's promises in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Luck Landscaping prays for relief and judgment as follows:

(a)    Judgment in favor of Luck Landscaping and against Ms. Lanterman, in an amount to be determined at trial, including but not limited to compensatory damages for past and future injury, reliance damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

(b)    An award of the cost of the suit, including reasonable attorneys' fees; and

(c)    Such other and further relief as the Court deems just, equitable, and proper.

Respectfully submitted,

/s/ Christopher A. LaRocco
Christopher A. LaRocco (0093572), *Trial Attorney*
Jake A. Thorn (0098785)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-5412
Fax: (614) 464-5412
calarocco@vorys.com
jathorn@vorys.com
*Counsel for Plaintiff*

20

## Jury Demand

Luck Landscaping demands a trial by a jury on all triable issues of this complaint.

/s/  Christopher A. LaRocco
Christopher A. LaRocco (0093572)
*Counsel for Plaintiff*

# EXHIBIT A



1

**Landscape Installation Contract**
**Mrs. Janet Lanterman**
**29727 E River Rd**
**Perrysburg, Ohio 43551**

Luck Landscaping will furnish all labor and select materials for the completion of the proposed project.

## 1. Scope of Work – Per Scope, Scale, Budget Report

Luck Landscaping shall provide all labor, materials (unless otherwise noted), equipment, and supervision necessary to complete the design and full-scale installation of a custom landscape and hardscape project at 29727 E River Rd, Perrysburg, Ohio. The scope includes transforming the estate's front entry, driveway approach, outdoor living spaces, pool surround, hillside access, and surrounding landscape features.

Key elements include installation of natural stone steps and retaining walls, over 4,900 sq ft of tile overlay at the pool and patio areas (tile furnished by client), driveway entry enhancements with brick pillars and decorative walls, extensive planting of decorative trees, shrubs, evergreens, perennials, turf, and a sculpted landscape mound. Project also includes an irrigation system, LED lighting, iron entry gate, electrical work, and final grading with sod installation.

All work will be performed per the approved design plan, scope,scale budget report and specifications, with the intent of creating a seamless, artistic, and high-end outdoor living environment that reflects the client's vision and lifestyle.

## 2. TIMELINE

Luck Landscaping will begin the project by 5/1/~~24~~ 25 LL, and finish by 5/1/~~25~~ 26 LL. Any delays will be discussed with the client. Actual construction dates are approximate due to variable weather conditions affecting our work schedule.

2



### 3. Payment Schedule

Client agrees to pay Luck Landscaping according to the following milestone-based payment plan:

- **20% Upon Acceptance** of contract and execution of agreement

- **20% Upon Project Start** and commencement of on-site work

- **20% Upon Completion of Rock Work** including stone steps, walls, boulders, and hardscape elements

- **20% Upon Completion of Landscaping** including plantings, turf, mulch, and decorative beds

- **20% Upon Final Completion** of all work, including punch list, cleanup, and client walkthrough

All payments are due upon invoice at each milestone. Work may be paused if payments are not received in a timely manner, and scheduling may be adjusted accordingly.

*If remaining balance is not paid when due, interest will be added to and payable on all overdue amounts at maximum percentage allowed under applicable laws. Client shall pay all costs of collection.



3

## 4. LUCK LANDSCAPING'S RIGHTS & RESPONSIBILITIES

*4.1*    Luck Landscaping will contact OUPS to mark underground utilities. Client is responsible for marking any non-utility underground items such as irrigation systems, dog fences, electrical or gas supply lines, etc. Please mark such items with either spray paint or flags prior to construction.

*4.2*    Luck Landscaping honors all manufacturers' warranties and guarantees its workmanship for one full year after installation.

*4.3*    Luck Landscaping will maintain an insurance policy of one million dollars, which will cover equipment, materials and all employees and/or subcontractors.

*4.4*    Luck Landscaping is not responsible for permits required by local ordinances and or homeowners associations.

*4.5*    Luck Landscaping agrees to remove all materials and debris from the location specified in section one upon completion of the work.

4.6    Cost Contingency of 10% will be allotted for the project. A construction contingency is an amount of money set aside to cover any unexpected costs that can arise throughout a construction project. This money is on reserve and is not allocated to any specific area of work. Essentially, the contingency acts as insurance against other, unforeseen costs.An amount added to an estimate to allow for items, conditions, or events for which the state, occurrence, or effect is uncertain and that experience shows will likely result, in aggregate, in additional costs.Unexpected costs and or additional charges that may be revealed during construction are not included in contract price and will be discussed/determined as they arise and added through a change order.

4.7    Luck Landscaping will use a Change Order Form that represents the mutual consensus on a change to the work, the price, the schedule, or some other term of the contract. A change order must be created and approved by client and Luck Landscaping.

4



Notice of right to cancel: You have the right to cancel this contract. You may do so by sending a cancellation notice in writing or email within 3 days of signing the contract.

Luck Landscaping and client agree that this contract is enforceable according to the laws of the state of Ohio.
Luck Landscaping retains the right to use images from the project for advertising and promotional purposes.

*Material Price Escalation Clause : Due to the instability of product pricing in the marketplace, Luck Landscaping has the right to increase the price on products in the contract to their price at time of installation. Luck Landscaping will notify the client before installation of any product that has had a significant price increase since the time of the contract signing through a change order.

_____

**Client Name**

_____

**Luck Landscaping Representative Name**

_____

**Customer Signature**

_____3/28/2025_____

**Date**

_____

**Luck Landscaping Representative Signature**

_____03/28/2025_____

**Date**



## Scope – Scale – Budget Report Updated V2

**Client:** Mrs. Janet Lanterman
**Project Address:** 29727 E River Rd, Perrysburg, Ohio 43551
**Date:** 03/27/25
**Consultant:** Josh Luck | Luck Landscaping

## Scope of Work Overview

This premier estate landscape project focuses on the full transformation of the property's **entry experience, hillside access, outdoor living spaces,** and **architectural landscaping**. The plan incorporates high-end natural elements, structural hardscaping, softscaping, lighting, and grading—blending beauty, function, and peaceful design.

## Key Project Components

**Driveway & Entry Features**

- (22) **Ornamental trees** lining the driveway for formality and rhythm

- **Gated brick pillar wall entry feature**

- (20) **Brick pillars** with integrated sconce lighting

- (5) **Brick accent walls** spaced along the drive

- (2) **Additional entry walls and brick pillars** with surrounding landscaping at the road – **$100,000 budget**

- **2,000 sq ft of turf** to soften entry areas

- **Decorative fencing** enclosing turf zone – **$5,000**



- **Iron gate system** with keypad and remote control

---

**Hillside & Waterfront Access**

- Approx. (75) **natural stone steps** from top lawn down to the jetty

- **Multi-tiered retaining accent walls** along hillside

- **Top-tier retaining wall** for upper-grade elevation control

- Stonework estimated at:

    - 250 tons for walls

    - 50 tons for steps

    - 40 tons for front landscape accents

    - 7 tons of steppers

    - **Total Stone:** ~350 tons

---

**Outdoor Living – Pool Surround, Patio, Walkways**

- **4,900 sq ft tile overlay** for:

    - **Pool surround**

    - **Rear patio area**

    - **Sidewalks and patio at side of home**



- **Client to furnish tile material:** Luck Landscaping to perform full prep, base work, and installation

---

### Landscape Planting Installation

- Full landscape installation based on design plan:

  - ○ **Decorative trees**

  - ○ **Flowering shrubs**

  - ○ **Evergreens**

  - ○ **Perennials**

- Includes all prep, compost, and mulch

- **Planting Installation Budget:** $225,000

- **Additional landscaping for sculpted mound area:** $40,000

- **Decorative Stone Ground Cover:** 10,000 sq ft – $25,000

- **Groundcover Plantings:** 20,000 sq ft – $25,000

- **Mulch Installation:** 12,000 sq ft – $13,000

---

### Hardscaping & Structural Construction

- Installation of **brick pillars, retaining walls, stone steps,** and **boulder groupings**

- Full **stone base work** and compaction for all structural elements – **$20,000**



### Lighting, Irrigation & Electrical

- **Low-voltage LED landscape lighting** package – $50,000

- **Irrigation system installation** (approx. 20,000–25,000 sq ft) – $20,000–$25,000

- **Electrical conduit and support systems** – $10,000–$15,000

### Site Access, Prep & General Labor

- **Access road refresh** with 36 tons decomposed granite – $15,000

- **General landscaping labor** – $50,000

- **Delivery & disposal** – $10,000

- **Misc. materials & supplies** – $10,000

- **Portable restroom & dumpster** – $2,500

### Final Grading & Sod

- **Fine grading and sod installation** for all disturbed and finish areas – **$50,000**



## Updated Investment Summary

| Category | Estimated Budget |
| --- | --- |
| Stone (Approx. 350 tons) | $350,000 |
| Planting Installation | $225,000 |
| Landscaping Mound & Soil Work | $40,000 |
| Tile Overlay (Pool, Patio, Walks – Labor) | $125,000 |
| Brick Pillars & Accent Walls (20) | $150,000 |
| 2 Entry Wall Features & Landscaping | $100,000 |
| Decorative Fencing | $5,000 |
| **Iron Gate & Entry System** | **$30,000** |
| Stone Base Work | $20,000 |
| Electrical Work | $10,000–$15,000 |
| LED Landscape Lighting | $50,000 |
| Irrigation System | $20,000–$25,000 |
| Decomposed Granite Access Road | $15,000 |
| Decorative Stone Ground Cover | $25,000 |
| Groundcover Plantings | $25,000 |
| Mulch | $13,000 |
| General Landscaping Labor | $50,000 |
| Delivery & Disposal | $10,000 |

*[handwritten note beside Tile Overlay row:]* Taking Out. Client Has Contractor for Install.



| | |
|---|---|
| Misc. Materials & Supplies | $10,000 |
| Porta John & Dumpster | $2,500 |
| Fine Grading & Sod | $50,000 |
| **Total Estimated Investment:** | **$1,470,500 – $1,485,500** |



## Scope – Scale – Budget Report – Updated V3

**Client: Mrs. Janet Lanterman**
**Project Address: 29727 E River Rd, Perrysburg, Ohio 43551**
**Date: 03/27/25**
**Consultant: Josh Luck | Luck Landscaping**

## Scope of Work Overview

**This premier estate landscape project focuses on the full transformation of the property's entry experience, hillside access, outdoor living spaces, and architectural landscaping. The plan incorporates high-end natural elements, structural hardscaping, softscaping, lighting, and grading—blending beauty, function, and peaceful design.**

## Key Project Components

**Driveway & Entry Features**

- **(22) Ornamental trees lining the driveway for formality and rhythm**

- **Gated brick pillar wall entry feature**

- **(20) Brick pillars with integrated sconce lighting**

- **(5) Brick accent walls spaced along the drive**

- **(2) Additional entry walls and brick pillars with surrounding landscaping at the road – $100,000 budget**

- **2,000 sq ft of turf to soften entry areas**

- **Decorative fencing enclosing turf zone – $5,000**

- **Iron gate system with keypad and remote control – $30,000**



**Hillside & Waterfront Access**

- **Approx. (75) natural stone steps from top lawn down to the jetty**

- **Multi-tiered retaining accent walls along hillside**

- **Top-tier retaining wall for upper-grade elevation control**

- **Stonework estimated at:**

    - **250 tons for walls**

    - **50 tons for steps**

    - **40 tons for front landscape accents**

    - **7 tons of steppers**

    - **Total Stone: ~350 tons**

**Landscape Planting Installation**

- **Full landscape installation based on design plan:**

    - **Decorative trees**

    - **Flowering shrubs**

    - **Evergreens**

    - **Perennials**

- **Includes all prep, compost, and mulch**

Luck Landscaping
1907 N Reynolds Rd Toledo, Ohio 43615
Lucklandscaping.com



- **Planting Installation Budget: $225,000**

- **Additional landscaping for sculpted mound area – $40,000**

- **Decorative Stone Ground Cover: 10,000 sq ft – $25,000**

- **Groundcover Plantings: 20,000 sq ft – $25,000**

- **Mulch Installation: 12,000 sq ft – $13,000**

---

**Hardscaping & Structural Construction**

- **Installation of brick pillars, retaining walls, stone steps, and boulder groupings**

- **Full stone base work and compaction for all structural elements – $20,000**

---

**Lighting, Irrigation & Electrical**

- **Low-voltage LED landscape lighting package – $50,000**

- **Irrigation system installation (approx. 20,000–25,000 sq ft) – $20,000–$25,000**

- **Electrical conduit and support systems – $10,000–$15,000**

---

**Site Access, Prep & General Labor**

- **Access road refresh with 36 tons decomposed granite – $15,000**

- **General landscaping labor – $50,000**



| | |
|---|---|
| **Iron Gate & Entry System** | $30,000 |
| **Stone Base Work** | $20,000 |
| **Electrical Work** | $12,500 (avg) |
| **LED Landscape Lighting** | $50,000 |
| **Irrigation System** | $22,500 (avg) |
| **Decomposed Granite Access Road** | $15,000 |
| **Decorative Stone Ground Cover** | $25,000 |
| **Groundcover Plantings** | $25,000 |
| **Mulch** | $13,000 |
| **General Landscaping Labor** | $50,000 |



| | |
|---|---|
| **Delivery & Disposal** | $10,000 |
| **Misc. Materials & Supplies** | $10,000 |
| **Porta John & Dumpster** | $2,500 |
| **Fine Grading & Sod** | $50,000 |
| **Heavy Equipment Costs / Fuel** | $30,000 |
| **Turf Installation (2,000 sq ft)** | $35,000 |

**Updated Subtotal (Average Budget): $1,270,500**
**Sales Tax @ 7.75%: $98,463.75**
**Total Project Investment w/ Tax: $1,368,963.75**

3/15/25

Luck Landscaping
1907 N Reynolds Rd Toledo, Ohio 43615
Lucklandscaping.com



Scope – Scale – Budget Report – V4
Client: Mrs. Janet Lanterman
Project Address: 29727 E River Rd, Perrysburg, Ohio 43551
Date: [Insert Today's Date]
Consultant: Josh Luck | Luck Landscaping

## Scope of Work Overview

This premier estate project continues the transformation of the Lanterman property into a cohesive, elegant, and functional landscape experience. From refined entry details to hillside access, structural elements, planting, and lighting—each feature is crafted to match the home's character and the client's vision.

## Key Project Components

### Driveway & Entry Features

- (22) Ornamental trees lining the driveway for formality and rhythm

- (20) Brick pillars with integrated sconce lighting

- (5) Brick accent walls spaced along the drive

- Custom perimeter brick fencing wall with iron accent panels

### Hillside & Waterfront Access

- Approx. (75) natural stone steps from top lawn down to the jetty

- Multi-tiered natural retaining walls



- **Top-tier retaining wall for upper-grade elevation control**

- **Stone Materials:**

    o   **250 tons for walls**

    o   **50 tons for steps**

    o   **40 tons for front landscape accents**

    o   **7 tons of steppers**

    o   **Total Estimated Stone: ~350 tons**

---

**Landscape Planting Installation**

- **Full property planting based on design plan**

- **Decorative trees, flowering shrubs, evergreens, and perennials**

- **Includes prep, compost, and mulch**

- **Sculpted mound area landscape – $40,000**

- **Decorative stone ground cover – 10,000 sq ft – $25,000**

- **Groundcover plantings – 20,000 sq ft – $25,000**

- **Mulch installation – 12,000 sq ft – $13,000**

- **Planting Installation Budget: $225,000**

---

**Hardscaping & Structural Construction**



- **Installation of brick pillars, accent walls, and perimeter fencing walls**

- **Concrete footings for all masonry and structural work – $125,000**

- **Full stone base and compaction for all hardscaping – $20,000**

---

**Lighting, Irrigation & Electrical**

- **Low-voltage LED landscape lighting – $50,000**

- **Irrigation system installation (20,000–25,000 sq ft) – $22,500 avg**

- **Electrical conduit and trenching – $12,500 avg**

---

**Site Access, Prep & General Labor**

- **Access road stabilization with 200 tons of new stone – $17,500**

- **General landscaping labor – $50,000**

- **Delivery & disposal – $10,000**

- **Misc. materials and supplies – $10,000**

- **Porta John & dumpster – $2,500**

- **Fine grading & sod – $50,000**

- **Heavy equipment costs / fuel – $30,000**

---

**Turf Installation (2,000 sq ft)**

Luck Landscaping
1907 N Reynolds Rd Toledo, Ohio 43615
Lucklandscaping.com



- Turf installation to soften front entry zones and enhance curb appeal – $35,000

- Decorative fencing enclosing turf zone for safety and aesthetics – Included

## Updated Budget Summary (V4)

| Category | Estimated Budget |
|---|---|
| Stone (Approx. 350 tons) | $350,000 |
| Planting Installation | $225,000 |
| Landscaping Mound & Soil Work | $40,000 |
| Masonry Work (20 Pillars, 5 Walls, Perimeter) | $1,250,000 |
| Concrete Footings | $125,000 |
| Stone Base Work | $20,000 |
| Electrical Work | $12,500 |
| LED Landscape Lighting | $50,000 |
| Irrigation System | $22,500 |
| Access Road Stabilization | $17,500 |
| Decorative Stone Ground Cover | $25,000 |
| Groundcover Plantings | $25,000 |
| Mulch | $13,000 |
| General Landscaping Labor | $50,000 |

Luck Landscaping
1907 N Reynolds Rd Toledo, Ohio 43615
Lucklandscaping.com



| | |
|---|---|
| **Delivery & Disposal** | **$10,000** |
| **Misc. Materials & Supplies** | **$10,000** |
| **Porta John & Dumpster** | **$2,500** |
| **Fine Grading & Sod** | **$50,000** |
| **Heavy Equipment Costs / Fuel** | **$30,000** |
| **Turf Installation (incl. fencing)** | **$35,000** |

**Updated Subtotal: $2,365,500**
**Sales Tax (7.75%): $183,826.25**
**Total Project Investment: $2,549,326.25**

## Payment Schedule

- **Initial Deposit (Due Upon Contract Signing): $200,000**

- **Remaining Balance: $2,349,326.25**

**Installment Payment Breakdown (Remaining Balance Split into 4 Equal Payments):**

- **Payment 1 – 20%: $469,865.25 Received**

- **Payment 2 – 20%: $469,865.25  Received**

- **Payment 3 – 20%: $469,865.25**

- **Payment 4 – 20%: $469,865.25**

12/9/25

# **LANTERMAN ESTATE – VERSION 5

PRESENTATION & CLIENT AUTHORIZATION**

**Client:** Mrs. Janet Lanterman
**Property:** 29727 E River Rd, Perrysburg, Ohio
**Consultant:** Josh Luck | Luck Landscaping
**Project Term:** 2025–2027 | Multi-Year Estate Transformation

---

## OPENING – GRATITUDE, OPPORTUNITY & PARTNERSHIP

Mrs. Lanterman, before we talk about numbers, plans, or phases, I want to start with something much more important — **thank you**.

This project represents one of the greatest professional opportunities I have ever been given. Being entrusted with your home, your vision, and a property of this scale is something I hold with deep respect. This estate has challenged me creatively, pushed our entire team to operate at the highest level, and reminded me why I chose to build landscapes as an art form — not just a trade.

What began as a one-season landscape project has naturally, organically, and very beautifully revealed itself as a **multi-year, legacy-level estate transformation**. And I am truly honored to be building it with you.

---

## 1. THE FRONT ESTATE – 2025 AS THE FOUNDATION YEAR

This season was dedicated almost entirely to building the proper physical and visual foundation that a property like yours requires. That included:

- Full regrading across the front estate

- Shaping, grading, and repurposing the excavation pile into usable, intentional landscape

- Major soil correction, conditioning, and topsoil import

- Entry road formation and heavy stone base work

- Expanded garden layouts with more depth, scale, and structure

- Mature estate plantings for immediate presence and long-term canopy

- Expanded walking paths and front garden spaces

- The redesigned center garden water feature

- Extensive tree trimming, removals, and overall site restoration

- Irrigation and landscape lighting installation

- New water feature installations and designs

- Property maintenance and seasonal décor

The front became far more significant than originally envisioned — but this expansion allowed us to establish the correct **estate-level scale, balance, and visual strength** for the entire property. Everything that comes next now has a proper foundation to build upon.

## 2. MASONRY – THE ARCHITECTURAL BACKBONE OF THE ESTATE

Your masonry system has become one of the defining architectural elements of the entire estate.

Current progress:

- Six masonry walls nearing completion

- The entire masonry and fencing system is now fully approved

- Masonry work will continue through winter and throughout the 2026 season

- Over **70,000 bricks** have been ordered and are expected for delivery in early 2026

A major new architectural component was also added:

- A **175-foot masonry wall along the circle drive**

- Estimated investment of **$175,000–$200,000**

- Final material quantities and detailing are being refined

The final two original contract payments will support this masonry phase. This stonework becomes a permanent, generational feature of the estate — defining arrival, separation, privacy, and legacy presence.

The circle wall and additional perimeter fencing system areas will be refined for total cost and billed on a **Cost-Plus basis**, along with the projected budget pricing models.

---

# 3. THE HILLSIDE – A NEW PHASE OF OPPORTUNITY

The hillside has revealed itself as something far greater than originally imagined. It is no longer just a functional access point — it is now understood as a **major estate feature** with real engineering, architectural, and design requirements.

The hillside now includes:

*To Be Reviewed*

- Expanded removal, grading, and retention

- Structural drainage

- Boulder integration for retention and support

- Retaining architecture, steps, jetty, and shoreline restoration

- A refined design beyond the original concept

The original **$50,000 landscaping labor allowance** was fully invested into establishing the expanded front estate at its now-correct scale.

Positive positioning moving forward:

- Hillside stone is already secured on site

- We are positioned for proper design refinement

- We now understand the true scale and significance of this hillside feature

The hillside will now move forward under a **Cost-Plus structure**, ensuring it is executed responsibly, accurately, and transparently.

---

# 4. LANDSCAPING – FULL ESTATE SCALE NOW ACHIEVED

The original planting plan was intentionally modest as a starting point.

As the estate vision matured, the landscaping evolved with:

- Larger estate-grade trees and shrubs, replacing and transplanting stock for Spring 2026

- Revised bed layouts

- Increased depth, interest, and structure

- Additional plantings across the estate

Most significantly:

- **52 estate-size maple trees** were installed

- Additional evergreens, unique specimens installed, and curated stock selected for 2026 installation

This required:

- Substantial equipment

- Deep excavation and soil prep

- Expanded logistics

- Extended labor

This delivered what the property truly needed — **maturity, canopy, and immediate estate presence**, rather than years of waiting for scale.

---

## 5. ELECTRICAL – A TRUE ESTATE-LEVEL SYSTEM

What began as a simple electrical plan expanded into a full estate-level system as true needs became clear:

- Underground trenching

- Dedicated exterior circuits

- Power support for:

  - Landscape lighting

  - Water features

  - Masonry lighting

  - Gated entry system

- A full estate-wide lighting distribution plan

- Final fixture selections now identified

Additional lighting details:

- Expanded lighting plan and layout

- Approx. **$27,500** in lighting materials already identified, with more expected

Electrical work now proceeds under **Cost-Plus**, ensuring proper load management, safe distribution, and long-term reliability.

---

## 6. IRRIGATION – FULL PROPERTY COVERAGE

The original irrigation allowance reflected early conceptual expectations.

As the project evolved:

- Material costs alone now approach **$20,000**

- Zones, trenching, pipe, valves, and controller systems expanded significantly

- Labor requirements increased accordingly

Irrigation now proceeds under **Cost-Plus**, ensuring full estate coverage and proper long-term functionality.

---

# 7. ESTATE EQUIPMENT & MAINTENANCE INFRASTRUCTURE – FULL COST BREAKDOWN

To properly steward and maintain a property of this scale year-round — including lawn care, leaf management, snow and ice operations, and on-site service — we invested in dedicated **commercial-grade equipment** specifically for the Lanterman Estate.

As part of the approved **$75,000 Estate Equipment & Supply Allowance**, the following items were secured:

- **Grasshopper Commercial Lawn Mower** – $23,000

- **Scag Commercial Leaf Blower** – $13,000

- **Equipment Trailer** – $13,000

- **Snow & Ice Equipment (Hand Tools,Bins, Salters) & Salter Repairs** – $5,000

- **Salt Supply** – $5,000

- **Gator Repairs** – $1,000

- **Snow Plow System** – $10,000

- **Extension Cords & Power Infrastructure** – $4,000

**Total Equipment & Infrastructure Investment: $74,000**

(Within the original $75,000 allowance)

This investment ensures:

- Reliable year-round maintenance capability

- Professional-grade service

- Immediate response for snow, debris, and seasonal needs

- Reduced long-term operational risk

- Dedicated on-site infrastructure

Most importantly, it allows the estate to be cared for at the **correct professional level — consistently and without interruption.**

---

# 8. FINANCIAL STRUCTURE – TRANSPARENCY & ALIGNMENT

**Original Remaining Contract Balance:**
$2,349,326.25
Original payment entries were listed as **$469,865.25**, which did not match the remaining contract balance.

## Correct Breakdown Into Four Equal Payments:

- **Payment 1: $587,331.56**

- **Payment 2: $587,331.56**

- **Payment 3: $587,331.56**

- **Payment 4: $587,331.57**

These payments apply to the **original foundational contract only**, and this structure remains intact with the **Cost-Plus structure added on top** as the project has expanded.

## Payment Shortage Reconciliation:

Each of the first two payments was short by **$117,466.31**, resulting in a remaining balance of **$234,932.62** owed to complete Payments 1 & 2.

**Projected Payment Schedule for Remaining Base Contract:**

- **Payment 3:** Due 05/01/26

- **Payment 4:** Due 09/01/26

---

# 9. COST-PLUS LAYER – ADDED ON TOP OF BASE CONTRACT

All work that extends beyond the original foundational scope now proceeds under **Cost-Plus**, including:

- Hillside

- Electrical

- Irrigation

- Expanded landscaping

- Additional masonry

- Estate maintenance

- All subcontracted trades

These charges are:

- Billed **monthly**

- Fully documented

- Presented with clarity and itemization

This structure ensures:

- Healthy project momentum

- Responsible labor deployment

- Transparent material management

- Long-term sustainability

# 10. MOVING FORWARD – STEWARDSHIP & LONG-TERM VISION

This project now properly operates as:

- A structured, phased estate transformation

- Supported by monthly cost-plus transparency

- Guided by a multi-year design and build vision

- Managed through intentional labor planning and long-term care

This ensures the estate continues to grow with clarity, quality, and shared confidence.

# 11. MULTI-YEAR EXECUTION PLAN (2026–2027)

- Complete remaining front estate phases

- Begin and execute the full hillside build

- Continue masonry construction

- Finalize irrigation and lighting systems

- Maintain the estate year-round

- Continue architectural and landscape refinements

# CLOSING MESSAGE

Mrs. Lanterman, this estate has become something truly special. It represents growth, creativity, trust, and shared vision. I am deeply grateful for the opportunity to build something of this scale with you.

My commitment to you is unwavering:

**Craftsmanship.**
**Stewardship.**
**Accountability.**
**Excellence in every phase forward.**

Thank you for your confidence, your patience, and your partnership. Together, we are creating something that will last for generations.

**And on a personal note:**
*I truly hope this time away gives you the rest and renewal you deserve. While you're gone, please know your home and your estate will be cared for as if it were our own. Take this time for yourself without worry — we will continue moving things forward, and we'll be right here when you return, ready to continue building something beautiful together.*

# CLIENT AUTHORIZATION – VERSION 5 APPROVAL

By signing below, the Client confirms understanding and approval of:

- Version 5 Scope, Scale & Budget

- Foundational Payment Structure

- Cost-Plus Additions

- Monthly Billing for Expanded Scope

- Multi-Year Estate Execution Plan

**Mrs. Janet Lanterman**
**Client Signature:** _____
**Date:** _____ Dec 9 7th 2025

**Josh Luck – Luck Landscaping**
**Signature:** _____
**Date:** 12-9-25

# EXHIBIT B

# Luck Landscaping

*Honor Your Craft • Design • Build • Inspire*

# Proposal: Front Landscaping Renovation & Water Feature Addition " *ART IN MOTION* "

**Client:** Mrs. Janet Lanterman

## Visionary Introduction

Mrs. Lanterman,

What we are envisioning for your estate is not simply a water feature or a garden space — it is the creation of a **living masterpiece**, a landmark that will set your property apart for generations. This is an opportunity to transform the very front of your estate into a **destination of beauty, artistry, and timeless luxury**.

Imagine approaching your home and being greeted by the sound of cascading waterfalls flowing from **three distinct pooling areas** nestled into the hillside, each alive with movement, clarity, and color. A **200-foot meandering stream** carries the water gracefully from level to level, connecting falls, pools, and fountainscapes — all integrated seamlessly with **weathered limestone boulders**, blending the strength of stone with the serenity of water.

This addition invites exploration and interaction. A **custom gazebo**, poised on the mid-tier pond, creates a private retreat within the garden — a place to pause, reflect, and take in the wonder of what surrounds you. Meandering **brick walkpaths**, designed with the same artistry as your home's architecture, guide you up the hillside, past waterfalls and blooming gardens, to a custom patio where you can sit and let the experience wash over you. **Bridges, arbors, trellises, and birdhouses** add layers of detail and charm, while thoughtfully designed **lighting** transforms the feature into a glowing sculpture at night.

This is not just landscaping — this is **art in motion**. The project allows us to showcase the true potential of your property while displaying our own highest level of craftsmanship, creativity, and vision. It is rare in our industry to have the opportunity to create something of this magnitude, and we approach it with the honor, humility, and passion that a project of this scale deserves.

We believe this addition will elevate your estate into one of the **most remarkable private gardens in the region,** a place that brings peace, pride, and inspiration every day. It is an opportunity for us to raise the bar, not only for your property, but for the very definition of what a luxury landscape can be.

This is the standard we are setting: **nothing short of a masterpiece.**

## Scope of Work

- **Three pooling areas** (upper, mid, lower) for custom fountainscapes features,bird baths and natural look

- **200 ft meandering stream** with natural limestone falls and pooling areas.

- **Fountainscapes**: spillway bowls, bubbling boulders, and custom fountain accents.

- **Custom gazebo** on mid-tier pond.

- **Brick walkpaths and patio**: house brick + mortar joints + veneer artistry.

- **Wing walls, steps, and walkpaths** built into stonework.

- **Bridge feature** spanning the stream.

- Expanded **perennial and shrub beds**, specimen trees, and evergreens.

- **Arbors, trellises, birdhouses**, and artistic garden details.

- **Low-voltage LED lighting** to enhance water feature and gardens.

## Scale of Work

- **Water Feature:** 200' stream, 3 ponds, limestone boulders, fountains, and gazebo.

- **Hardscape:** ~200 sq ft brick walkpath + custom patio; stone walls, steps, and artistic detailing.

- **Softscape:** Expanded gardens with layered seasonal plantings and specimen trees.

- **Enhancements:** Lighting, fountainscapes, bridge, arbors, trellises.

- **Construction:** Heavy excavation, hauling, disposal, and specialized equipment/labor.

## Budget Breakdown

| Component | Estimated Cost |
| --- | --- |
| Multi-tier water feature (3 ponds + 200' stream + filtration) | $350,000 – $400,000 |
| Brick walkpath & patio (house brick + veneer artistry) | $115,000 – $135,000 |
| Additional stonework (150 tons for walls, steps, paths) | $150,000 |
| Bridge feature | $7,500 |
| Expanded plantings & landscaping gardens | $75,000 |
| Unique fountainscapes | $50,000 |
| Landscape lighting (water feature + gardens) | $20.000 |
| Heavy equipment | $25,000 |
| General labor | $20,000 |
| Delivery & disposal | $5,000 |

### Total Projected Budget Range

**$817,500 – $887,500**

## Notes & Considerations

*$ 200,000 Deposit Recieved*

- This proposal is **conceptual and budgetary**; refinements will follow upon approval.

- Project completion will extend into the **next construction season** to ensure time, resources, and artistry.

- This addition represents an **unparalleled opportunity** to elevate the estate with a world-class, artistic landscape.

## Approval & Authorization

By signing below, the client acknowledges review and approval of the proposed concept, scope, and budget range as outlined. Final details and design refinements will follow in collaboration prior to commencement of work.

**Client Name:** _JANET LANTERMAN_

**Signature:** _Janet Late_

**Date:** _9/16/2025_

## Closing Statement

Mrs. Lanterman, this vision represents not only an addition to your estate, but the creation of a truly remarkable **work of art**. It is our privilege to imagine and bring forward such a feature, and we stand ready to refine and realize this concept should you wish to move ahead.

**With gratitude and excitement,**
**Josh Luck**
Luck Landscaping